728 So.2d 725 (1999)
Sherod DILLARD, Petitioner,
v.
STATE of Florida, Respondent.
No. 92,615.
Supreme Court of Florida.
February 11, 1999.
James Marion Moorman, Public Defender, and Julius J. Aulisio, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, Robert J. Krauss, Senior Assistant Attorney General, and Dale E. Tarpley, Assistant Attorney General, Tampa, Florida, for Respondent.
SHAW, J.
We have for review Dillard v. State, 705 So.2d 583 (Fla. 2d DCA 1997), which conflicts with State v. Tito, 616 So.2d 39 (Fla. 1993). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We approve Dillard as explained below.
Petitioner Sherod Dillard was sentenced to six months' community control and five years' probation for crimes that took place in May 1992. He violated probation in 1993 and was resentenced to four years' imprisonment and two years' community control. While on community control in December 1994, he and two friends robbed a Long John Silver's restaurant. The trial court at sentencing[1] for both the new crimes and the violation of community control used two separate scoresheets (i.e., one for the 1992 offenses and one for the 1994 offenses), and imposed two consecutive guidelines sentences.[2] The district court affirmed, and this Court granted review based on conflict with State v. Tito, 616 So.2d 39 (Fla. 1993) (holding that a single scoresheet must be used in the final stage of resentencing following probation violation). Dillard contends that the trial court erred in using two separate scoresheets and in imposing consecutive sentences. We disagree.
This Court in Tito held that, under the then-current version (i.e., the 1983 version) of the sentencing guidelines, a single scoresheet must be used in the final stage of sentencing following probation violation:

*726 [W]hen probation violation cases are being sentenced in conjunction with new substantive offenses, multiple scoresheets are to be prepared to determine the most severe sanction. Once the scoresheet with the most severe sanction is determined, that is the scoresheet to be used.
Id. at 40. Our holding was based on language governing sentencing for multiple offenses that was contained in the 1983 guidelines.[3]
When the guidelines were revised in 1994, the new guidelines continued to call for use of a single scoresheet during routine sentencing for multiple offenses.[4] However, the revision presented a new problem: whether single or multiple scoresheets are to be used at sentencing for multiple offenses committed under different versions of the guidelines. While the revision did not expressly address this problem, the revised guidelines made it clear that the date of January 1, 1994, is a line of demarcation and that the new guidelines are inapplicable to sentencing for crimes committed prior to that date:
(b)1. The guidelines enacted effective October 1, 1983, apply to all felonies, except capital felonies, committed on or after October 1, 1983, and before January 1, 1994; and to all felonies, except capital felonies and life felonies, committed before October 1, 1983, when the defendant affirmatively selects to be sentenced pursuant to such provisions.
2. The 1994 guidelines apply to sentencing for all felonies, except capital felonies, committed on or after January 1, 1994.
§ 921.001(4), Fla. Stat. (Supp.1994).
Thus, under this statutory scheme, the 1983 and 1994 versions of the guidelines constitute two separate and distinct forms of sentencing and the respective scoresheets cannot be intermingledthe scoresheets from one version cannot be used for pending offenses committed under the other. This means that when a defendant is being sentenced for crimes that occurred under both versions, the court must prepare one 1983 scoresheet for all pending offenses that occurred before January 1, 1994, and a separate 1994 scoresheet for all pending offenses that occurred on or after that date.[5] This bipartite sentencing scheme was clarified by the legislature in 1995:
(3) A single guidelines scoresheet shall be prepared for each defendant, except that if the defendant is before the court for sentencing for more than one felony and the felonies were committed under more than one version or revision of the guidelines, separate scoresheets must be prepared pursuant to s. 921.001(4)(b). The scoresheet or scoresheets must cover all the defendant's offenses pending before the court for sentencing.
§ 921.0014(3), Fla. Stat. (1995). This clarification was subsequently adopted by this Court:

*727 (2) One scoresheet shall be prepared for all offenses committed under any single version or revision of the guidelines, pending before the court for sentencing.
(3) If an offender is before the court for sentencing for more than one felony and the felonies were committed under more than one version or revision of the guidelines, separate scoresheets must be prepared and used at sentencing. The sentencing court may impose such sentence concurrently or consecutively.
Fla. R.Crim. P. 3.703(d).
In the present case, the trial court used two separate scoresheets (i.e., a 1983 scoresheet and a 1994 scoresheet) in the final stage of sentencing for Dillard's 1992 and 1994 offenses. This was proper, as explained above, because the crimes fell under both versions of the guidelines. Tito, which calls for use of a single scoresheet in the final stage of sentencing, is inapplicable herethe crimes in that case all fell under one version (i.e., the 1983 version) of the guidelines. The rationale of Tito is inapposite to sentencing for crimes that took place under different versions of the guidelines. The trial court also acted within its authority in imposing the sentences consecutively.[6]
Accordingly, we approve Dillard and clarify Tito as explained herein.
It is so ordered.
HARDING, C.J., and WELLS, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
NOTES
[1] The sentencing on these offenses took place in December 1995 and was continued in January 1996.
[2] The court sentenced Dillard to a six-year term of imprisonment for the 1992 offenses and a 125.2-month term for the 1994 offenses.
[3] The sentencing guidelines prior to the 1994 revision provided:

(1) One guideline scoresheet shall be utilized for each defendant covering all offenses pending before the court for sentencing....
. . . .
(3) "Primary offense" is defined as that offense at conviction which, when scored on the guidelines scoresheet, recommends the most severe sanction. In the case of multiple offenses, the primary offense is determined in the following manner:
(A) A separate guidelines scoresheet shall be prepared scoring each offense at conviction as the "primary offense at conviction" with the other offenses at conviction scored as "additional offenses at conviction."
(B) The guidelines scoresheet which recommends the most severe sentence range shall be the scoresheet to be utilized by the sentencing judge pursuant to these guidelines.
Fla. R.Crim. P. 3.701(d)(1993).
[4] The 1994 revision provided:

(2) A single guidelines scoresheet shall be prepared for each defendant. The scoresheet must cover all the defendant's offenses pending before the court for sentencing.
§ 921.0014(2), Fla. Stat. (1993).
[5] For instance, when filling out scoresheets for a defendant in Dillard's position, the following rules would apply: When completing the 1983 scoresheet for the 1992 crimes, the 1994 crimes cannot be entered at all; and when completing the 1994 scoresheet for the 1994 crimes, the 1992 crimes can be entered only as part of the defendant's "prior record," not as "additional offenses." This disposition is dictated by the definitions of "prior record" and "additional offense." See § 921.0011(1),(5), Fla. Stat. (1995).
[6] See § 921.16. Fla. Stat. (1995), which states in relevant part:

(1) A defendant convicted of two or more offenses charged in the same indictment, information, or affidavit or in consolidated indictments, informations, or affidavits shall serve the sentences of imprisonment concurrently unless the court directs that two or more of the sentences be served consecutively. Sentences of imprisonment for offenses not charged in the same indictment, information, or affidavit shall be served consecutively unless the court directs that two or more of the sentences be served concurrently.